UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x

In re:

N. Bergman Insurance Trust,                              Case No.: 1-12-40822-nhl

                                                                                            Chapter 11

                          Debtor.

---------------------------------------------------------x

**DECISION DENYING
DEBTOR'S MOTION TO REOPEN CHAPTER 11 CASE**

APPEARANCES*:*

| | |
|---|---|
| Michael F. Kanzer, Esq. | Douglas A. Foss Esq. |
| Michael F Kanzer & Associates PC | Harris Beach PLLC |
| 2110 Avenue U | 99 Garnsey Road |
| Brooklyn, New York 11229 | Pittsford, New York 14534 |
| *Counsel for the Debtor* | *Counsel for Financial Life Services LLC* |

NANCY HERSHEY LORD
UNITED STATES BANKRUPTCY JUDGE

This matter comes before the Court on the motion of N. Bergman Insurance Trust (the "Debtor") for an order reopening its bankruptcy case (the "Motion to Reopen") to vacate this Court's Order granting secured creditor Financial Life Services LLC ("FLS") relief from the automatic stay. The Debtor seeks to reinstate the automatic stay and to market and sell a certain life insurance policy. FLS opposes the Motion to Reopen. For the reason discussed below, the Motion to Reopen is denied.

## JURISDICTION

This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1996, as amended by order dated December 5, 2012. This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND

The Debtor, an insurance trust, owned a $10,000,000 face value permanent life insurance policy, issued by Transamerica Occidental Life Insurance Company ("Transamerica") on the life of Nancy Bergman (the "Policy"). Mot. Reopen ¶ 2, ECF No. 49. The Debtor originally owned the Policy outright, but transferred title to FLS pursuant to an agreement entered into on November 9, 2010. Mot. Reopen ¶ 3, ECF No. 49.

On October 1, 2010, FLS filed a complaint against the Debtor in the United States District Court for the Eastern District of New York, alleging the Debtor misrepresented the Policy and breached the Agreement. Complaint *Financial Life Services, LLC v. N. Bergman Insurance Trust*, CV 10-4499 (E.D.N.Y filed October 4, 2010).[1] On June 27, 2011, Magistrate

---

[1] The complaint is annexed as Exhibit E to Lift Stay Motion, ECF No. 14; and as Exhibit 6 to the Foss Affidavit in Support of Opposition, ECF No. 59.

Judge William D. Wall issued a Report and Recommendation deciding in favor of FLS. Lift Stay Mot. Ex. H, ECF No. 14.  By Memorandum and Order dated September 22, 2011, Senior District Judge Denis R. Hurley directed that FLS recover $939,365.28 from the Debtor (including "$851,375.52 in compensatory damages for reimbursement of documented premiums paid by FLS"). Lift Stay Mot. Ex. I, ECF No. 14.  When the Debtor failed to pay, the District Court issued an Order on January 19, 2012, authorizing FLS to sell the Policy by sealed bid auction. Lift Stay Mot. Ex. M, ECF No. 14.  Bidding was to close on February 3, 2012, and the policy was to be awarded to the successful bidder on February 7, 2012. Foss Aff. in Supp. of Opp'n 8 ¶ 30, ECF No. 59.

On February 6, 2012, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code, invoking the automatic stay.  Schedule B of the petition listed an equitable interest in the Policy, valued at $3,500,000, as the Debtor's sole asset.  On February 13, 2012, FLS filed a Motion for Relief from the Automatic Stay (the "Lift Stay Motion") seeking an order, pursuant to 11 U.S.C. §§ 362(d)(1) and (d)(2), to modify and terminate the automatic stay and permit FLS to pursue its rights with respect to the District Court Orders.  Specifically, FLS wished to complete the sealed bid auction.

A hearing on the Lift Stay Motion was held on March 6, 2012, before the Honorable Jerome Feller.  FLS represented that if a premium payment of $50,000 was not tendered by March 9, 2012, the Policy would enter into a grace period, requiring a payment of $100,000. Tr. 8:20–9:2, March 6, 2012.  During the hearing, the parties agreed the Debtor would have until August 6, 2012, to market and sell the Policy, so long as the Debtor paid all premiums due to prevent the Policy from lapsing (including any penalties for late payment). Tr. 13:11–14:25, March 6, 2012.  Judge Feller directed the parties to submit a stipulated order granting FLS

conditional relief from the automatic stay, and the matter was marked as settled on the Court's docket. But, FLS and the Debtor were unable to reach agreement concerning the terms of a proposed stipulated order. FLS April Appl. 3 ¶ 14 n.2, ECF No. 28.

Subsequently, Transamerica sent FLS a letter dated April 16, 2012 (the "Grace Notice"), which stated:

> Your policy has entered its grace period and is in danger of lapsing. Additionally, . . . your no-lapse death benefit guarantee endorsement, marketed as the Assured Coverage Endorsement (ACE), is in danger of termination . . . In order to maintain the no-lapse death benefit guarantee, we must receive a payment of **$85,620.78** by **May 16, 2012**. If we do not receive your payment by **May 16, 2012**, the ACE provision will be irrevocably terminated, will no longer be available to keep your policy from lapsing, and cannot be reinstated. In the absence of the ACE guarantee . . . we must receive a minimum payment of **$1,048,033.28** by **June 15, 2012**. If your payment is not received by June 15, 2012, your policy will lapse.

FLS April Appl. Ex. D, ECF No. 28 (emphasis in original). After receiving the Grace Notice, FLS moved to restore the Lift Stay Motion to the calendar. FLS April Appl. ECF No. 28. FLS argued that two points established cause to lift the automatic stay. First, the Debtor placed the Assured Covered Endorsement ("ACE") provision, a critical component of the Policy's value, at risk by failing to tender the April premium payment as required by the contemplated stipulation. Second, the Debtor's lack of assets, income, or funds with which to make the ACE payment continued to place the Policy in jeopardy. FLS April Appl. 6 ¶ 29, ECF No. 28.

Judge Feller entered an Order on April 23, 2012, restoring the Lift Stay Motion to the calendar and directing the Debtor to show cause at a hearing on May 1, 2012, why relief from the automatic stay should not be granted. At the hearing, the Debtor represented that, on or about May 1, 2012, it made the minimum payment required to retain the ACE provision. Tr. 4:8–14, 8:11–13, May 1, 2012. Based on the representation, the Court directed FLS to either submit an agreed upon order or settle a proposed order providing the Debtor an opportunity to market and

sell the Policy, conditioned on the Debtor's timely payment of premiums due on the Policy, failing which the automatic stay would terminate. Tr. 8:21–9:16, 15:16–18, May 1, 2012. However, FLS did not submit an order. Tr. 5:11–15, May 31, 2012.

Again, upon application of FLS filed May 23, 2012, the Court restored the Lift Stay Motion to the calendar and issued another Order to Show Cause. The application sought immediate relief from the stay in light of a notice from Transamerica, sent to FLS on May 21, 2012 (the "Termination Notice"), stating:

> Payment received 5/12/2012 $36,100 was returned from bank unpaid due to insufficient funds. The Ace provision has been terminated. Payment is needed in the amount of $1,048,033.28 by 6/15/2012 to keep the policy in force. We have received payment of $50,040 on 4/18/2012, the difference needed by 6/15/2012 is $997,993.28.

FLS May Appl. Ex. B, ECF No. 35. At a hearing on May 31, 2012, Debtor's Counsel explained that the check bounced due to a bank error, and the Debtor had contacted Transamerica to determine whether the ACE provision could be reinstated. Tr. 6:3–13, May 31, 2012. Nevertheless, Judge Feller granted FLS relief from the automatic stay, and on June 6, 2012, the Court issued an Order Granting Relief from the Automatic Stay (the "Lift Stay Order").

On June 12, 2012, the United States Trustee filed a Motion to Dismiss Case or Convert to Chapter 7 on the grounds that the Debtor lacked assets to reorganize, constituting cause for dismissal under § 1112(b)(4)(A). The Debtor did not file written opposition to the motion. After a hearing on July 31, 2012, the Court entered an Order dismissing the case on August 1, 2012.

## ARGUMENTS

The Debtor believes the case may be reopened pursuant to 11 U.S.C. § 350(b). Furthermore, the Debtor argues the Court should vacate the Lift Stay Order under Federal Rule of Civil Procedure ("Rule") 60(b)(2), (3), and (6), based on new evidence showing that, on

4

May 30, 2012, a payment was made to Transamerica on behalf of the Debtor. According to the Debtor, the new evidence proves that FLS knew of the payment and the subsequent reinstatement of the ACE provision and fraudulently withheld that information from the Court. Mot. Reopen ¶¶ 27–31, ECF No. 49.

FLS counters that the case may not be reopened under § 350(b) because it was dismissed, rather than closed. Furthermore, FLS argues the Debtor is not entitled to relief pursuant to Rule 60(b) because the Debtor neither presented newly discovered evidence nor demonstrated that FLS engaged in fraud.

## ANALYSIS

A. SECTION 350

11 U.S.C. § 350(a) states, in pertinent part, "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case." Section 350(b) permits the court in which the case was closed to reopen a case to "administer assets, to accord relief to the debtor, or for other cause." However, a case cannot be reopened under § 350(b) unless it has been fully administered and closed pursuant to § 350(a). *Cole v. Household Fin. (In re Cole)*, 382 B.R. 20, 24 (Bankr. E.D.N.Y. 2008). Courts agree that "'[a]n order dismissing a bankruptcy case accomplishes a different result than an order closing it would and is not an order closing'" the case. *Critical Care Support Servs. v. United States (In re Critical Care Support Servs.)*, 236 B.R. 137, 141 (E.D.N.Y. 1999) (quoting *Armel Laminates, Inc. v. Lomas & Nettleton Co. (In re Income Prop. Builders, Inc.)*, 699 F.2d 963, 965 (9th Cir.1982)).

Judge Feller's Order dismissed this case pursuant to 11 U.S.C. § 1112(b). Thus, the Debtor may not use § 350(b) to reopen its case. Instead, the Court must analyze the Motion to Reopen under Rule 60(b), because "[a] motion to 'reopen' a bankruptcy case that has been

dismissed is in reality a motion for relief from the order dismissing the case." *Cole*, 382 B.R. at 24.

B.    RULE 60(b)

Federal Rule of Civil Procedure 60(b), made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 9024, states, in pertinent part:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

A motion under Rule 60(b)(1), (2), or (3) must be made "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). Here, the Motion to Reopen was filed June 5, 2013; the Lift Stay Order and the Order Dismissing Chapter 11 Case were entered June 6, 2012, and August 1, 2012, respectively. Thus, to the extent the Debtor seeks relief under 60(b)(2) and (3), it has satisfied the bright line requirement to move within one year. However, relief under any subsection of Rule 60(b) also requires that the motion "be made within a reasonable time." Fed. R. Civ. P. 60(c)(1).

The need for finality and predictability "mandates caution in reopening judgments," and accordingly, "relief under Rule 60(b) is considered an extraordinary remedy." *Pettle v. Bickham (In re Pettle)*, 410 F.3d 189, 191 (5th Cir. 2005) (internal citations omitted). In applying Rule 60(b), Courts "strike[] a balance between serving the ends of justice and preserving the finality of judgments." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986). Generally, the "Second Circuit test [for Rule 60(b)] requires the movant to offer and establish (1) highly convincing

evidence in support of the motion; (2) good cause for failing to act sooner; and (3) lack of prejudice to the non-moving party." *In re DeMartino*, 484 B.R. 550, 555 (Bankr. E.D.N.Y. 2012).

A party moving under Rule 60(b)(2) "must demonstrate that he was justifiably ignorant of the newly discovered evidence despite due diligence." *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 178 (2d Cir. 2004) (citing *United States v. Int'l Brotherhood of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001)). To prevail, the movant

> must demonstrate that (1) newly discovered evidence is of facts existing at the time of [decision]; (2) the moving party is excusably ignorant of the facts despite using due diligence to learn about them; (3) the newly discovered evidence is admissible and probably effective to change the result of the former ruling; and (4) the newly discovered evidence is not merely cumulative . . . of evidence already offered.

*Mancuso v. Consol. Edison Co. of New York, Inc.*, 905. F. Supp. 1251, 1264 (S.D.N.Y 1995) (quoting *Weissmann v. Freeman*, 120 F.R.D. 474, 476) (S.D.N.Y 1988)).

The evidence must be "truly newly discovered," *United States v. Potamkin Cadillac Corp.*, 697 F.2d 491, 493 (2d Cir. 1983) (quoting *Westerly Electronics Corp. v. Walter Kidde & Co.*, 367 F.2d 269, 270 (2d Cir. 1966)), and to qualify as such, the evidence must be accompanied by a credible, fact-based explanation as to why it could not have been produced sooner through the exercise of due diligence. *Potamkin Cadillac Corp.*, 697 F.2d at 493 ("Given the feebleness of Movant's proffer of 'due diligence,' . . . it was well within the district court's discretion to reject the explanations and to consider the 'evidence' not newly discovered."). Moreover, "the newly discovered evidence must be of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 211 (9th Cir. 1987). The movant must "present a

cogent explanation as to why" the new evidence would change the outcome. *Resolution Trust Corp. v. Kemp*, 951 F.2d 657, 664 (5th Cir. 1992).

The Debtor presents an online banking statement from an account belonging to Herman Segal, a business associate of the Debtor (the "Segal Transaction History") as newly discovered evidence under Rule 60(b)(2). Mot. Reopen ¶ 28, ECF No. 49. According to the Debtor, the Segal Transaction History shows that Mr. Segal paid $36,105.95 to Transamerica on Debtor's behalf on May 30, 2012 (the "Segal Payment"). Segal Aff. in Supp. Mot. Reopen, ECF No. 50-1.

The Debtor's justification for the lapse of time between the Segal Payment and the production of the Segal Transaction History, that "they were having a problem getting the proof," proves unsatisfactory. Tr. 17:13–16, August 14, 2013. The Segal Transaction History is marked "Last Refreshed: Tuesday, June 12, 2012." Segal Aff. in Supp. Mot. Reopen, ECF No. 50-1. The Debtor asks the Court to accept that, while the Segal Transaction History "might have been printed out by Mr. Segal" in June 2012, "it was never given to" the Debtor. Tr. 18:2–6, August 14, 2013. FLS argues that, even if the Debtor could not immediately produce the Segal Transaction History, the Debtor had ample time to bring the Segal Payment to the Court's attention before the Court entered an Order dismissing the case on August 1, 2012. Tr. 46:10–12, August 14, 2013. The questionable timeline, combined with the Debtor's nebulous explanation for the lengthy delay, provides an insufficient basis for the Court to conclude that the Segal Transaction History could not have been obtained sooner through the exercise of due diligence.

Additionally, the Debtor fails to establish why the Segal Transaction History would likely have altered the end result of the case. Judge Feller conditioned the continuation of the automatic stay upon the Debtor "mak[ing] good [on] all and any obligation[s] necessary to prevent the lapsing of the policy." Tr. 8:21–8:9, May 1, 2012. The Debtor posits that the

8

"recently obtained evidence [shows] that as a result of [Mr. Segal's] payment the critical ACE provision was reinstated . . . and the A[CE] provision was active prior to the signing of the June 6, 2012 Order." Herbst Aff. in Support Mot. Reopen ¶ 21, ECF No. 51. Nevertheless, the Segal Payment occurred after the deadline for, and in an amount less than, that specified by Transamerica in the Grace Notice as necessary to secure the continuation of the ACE provision. *See* FLS April Appl. Ex. D, ECF No. 28. Thus, even if the Court had been made aware of the Segal Transaction History in a timely fashion, the end result would probably have been the same. Therefore, the Debtor failed to establish its entitlement to relief under Rule 60(b)(2).

Relief under 60(b)(3) requires clear and convincing evidence of fraud, material misrepresentations, or other misconduct. *Tyson v. City of New York*, 81 F. App'x 398, 400 (2d Cir. 2003); *Fleming v. New York Univ.*, 865 F.2d 478, 484 (2d Cir. 1989). "[C]onclusory allegations of fraud without specificity as to time, dates, places and persons" fail to meet the clear and convincing standard. *In re St. Stephen's 350 E. 116th St.*, 313 B.R. 161, 174 (Bankr. S.D.N.Y. 2004). In addition, the movant must show that "the fraud was material to the outcome," *In re Chipwich, Inc.*, 64 B.R. 670, 677 (Bankr. S.D.N.Y. 1986), and "prevented the moving party from fully and fairly presenting his case." *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004).

Here, the Debtor advances a speculative theory of fraud. The Debtor does not explain how or why, but insists "[i]t is highly unlikely that FLS . . . did know that the premium had been paid." Mem. of Law in Supp. 8 ¶ 14, ECF No. 52. According to the Debtor, even if FLS was unaware as of the May 31, 2012, hearing, it must have learned of the Segal Payment prior to June 6, 2012, the date on which Judge Feller signed the Lift Stay Order. Mot. Reopen ¶ 30–31, ECF No. 49. As such, the Debtor posits, FLS was obligated to notify the Court and the Debtor

9

of the Segal Payment, and its failure to do so constituted fraud. Mem. of Law in Supp. 8 ¶ 14, ECF No. 52.  Furthermore, the Debtor argues that FLS harmed the Debtor by conveying to the Court that the ACE provision terminated irrevocably, when in actuality the ACE provision continued in effect. Mot. Reopen ¶ 31, ECF No. 49.

To counter the Debtor's accusations, FLS presents a Premium History Report prepared by Transamerica on July 22, 2013. Foss Aff. in Supp. of Opp'n Ex. 26, ECF No. 59.  Notably, the Premium History Report does not contain an entry corresponding to the Segal Payment. Mem. of Law in Opp'n 11–12, ECF No. 58.  The Court cannot accept as clear and convincing evidence of fraud the bare allegation that FLS either knew or should have known about the Segal Payment during the pendency of the case when, apparently, neither Transamerica nor, until recently, the Debtor maintained a record of the Segal Payment.

Even if the Debtor produced clear and convincing evidence, the materiality of the alleged fraud to the outcome of the case hinges upon whether the Debtor can demonstrate that the Segal Payment reestablished the ACE provision, because if the payment did not restore the policy to full effect, then there still would have been cause to lift the stay and subsequently to dismiss the case.  The Debtor describes the Segal Transaction History as "highly compelling and . . . [supporting] the fairly obvious conclusion that the life insurance premiums were up to date and the ACE provision was not in danger of lapsing." Mem. of Law in Supp. 6 ¶ 10, ECF No. 52. However, per the Grace and Termination Notices, the ACE provision lapsed as of May 16, 2012. Krasnerman Aff. in Supp. of Opp'n 4 ¶ 17, ECF No. 60.

FLS disputes the causality between the Segal Payment and the restoration of the ACE provision. Tr. 41:14–17, August 14, 2013.  FLS explains that it retained special counsel to negotiate with Transamerica after receiving the Termination Notice, and Transamerica reinstated

the ACE provision only after FLS tendered a $73,200 payment on June 5, 2012. Foss Aff. in Supp. of Opp'n 13–14 ¶ 58–62, ECF No. 59; Krasnerman Aff. in Supp of Opp'n 5 ¶ 24, ECF No. 60.  Hence, FLS believed the reinstatement resulted from its own efforts; and it thus was not obligated to disclose that the ACE provision was successfully revived after the May 31, 2012, hearing, an assumption the Court finds to have been reasonable. Foss Aff. in Supp. of Opp'n 13–14 ¶ 58–62, ECF No. 59.  Accordingly, without contrary facts to buttress its allegations, the Debtor failed to meet the high burden of establishing material fraud, misrepresentations, or misconduct through clear and convincing evidence for the purposes of Rule 60(b)(2).

Finally, Rule 60(b)(6) "is properly invoked only when there are extraordinary circumstances justifying relief, when the judgment may work an extreme and undue hardship, and when the asserted grounds for relief are not recognized in clauses (1)–(5) . . . (b)(6) applies only when no other subsection is available." *Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986) (internal citations omitted); *see also Transaero, Inc. v. La Fuerza Area Boliviana,* 24 F.3d 457, 461 (2d Cir. 1994).

According to the Debtor, the "unusual course of the transaction" between FLS and the Debtor began with the Agreement, Mot. Reopen ¶ 3, ECF No. 49, which vested FLS with title to the Policy without obligating FLS to pay the Debtor for its interest, and ultimately led to an "unjust and unfair" outcome in the bankruptcy case, justifying the extreme relief, Mot. Reopen ¶ 33, ECF No. 49.  The Debtor goes on to argue that the Motion to Reopen will not prejudice FLS, because FLS will still be paid in full. Mot. Reopen ¶ 34, ECF No. 49.

The Court must consider, however, that for over a year, FLS reasonably relied upon the "belief that this matter had been fully and finally resolved" by the Lift Stay Order and resultant dismissal of the case. Krasnerman Aff. in Supp. of Opp'n 2 ¶ 5, ECF No. 60.  Transamerica has

since transferred the policy to a separate but affiliated entity, SPV LS LLC. Krasnerman Aff. in Supp. of Opp'n 4 ¶ 7, ECF No. 60. FLS calculated that "FLS or its affiliates have paid $932,200.00 in premiums since May 2012, and $1,888,575.52 in premiums since the acquisition of the Policy." Mem. of Law in Opp'n 7, ECF No. 58. On these facts, the Court finds neither extraordinary circumstances nor an extreme and undue hardship to warrant relief under Rule 60(b)(6).

## CONCLUSION

For the reasons set forth above, the Motion to Reopen is denied, with each side to bear its own fees and expenses. A separate order will issue.



**Dated: March 26, 2014**
**Brooklyn, New York**

**Nancy Hershey Lord**
**United States Bankruptcy Judge**